Filed 3/1/16  Watanabe v. Majumdar CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KENNETH TOMOMI WATANABE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>SRIPARNA MAJUMDAR,<br><br>　　　Defendant and Appellant. | A144650<br><br>(San Francisco County<br>Super. Ct. No. CCH15576535) |

Sriparna Majumdar challenges a civil harassment restraining order against her on the grounds that the order is not supported by substantial evidence, is overbroad, and violates her First Amendment rights.  We affirm.[1]

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In January 2015, Kenneth Watanabe petitioned the trial court to issue a civil harassment restraining order against Majumdar.  Majumdar and Watanabe met through their involvement in the "swing dance community."  In support of his petition for a restraining order, Watanabe alleged, "For about the last four years, [Majumdar] has written over 4700 emails and texts and calls my cell phone, even though I have repeatedly told her to stop.  [Majumdar] appears to be obsessed with me, believing that we are dating and love each other, even though I have repeatedly told her that I do not

---

[1] By its terms, the restraining order expired on February 4, 2016, one year after it was entered.  We decline to decide whether the appeal is moot because neither party has raised the issue and we reject Majumdar's claims on the merits.

1

love her or even consider her a friend." He further alleged that "[a]fter repeated requests to not make any contact or communication with me, [Majumdar] visited my residence and rang the doorbell, claiming that I had invited her, when, in fact, I had not." Watanabe asserted, "[A]lthough I was not physically harmed or injured, I was upset by her ignoring of my request to avoid contact with me." He asked for an order requiring Majumdar to stay 150 yards away from him and his home and workplace. Attached to Watanabe's request were nine pages of printed electronic messages that Majumdar apparently sent to him, including some exchanges between Majumdar and a third person, Nathan Dias, on which Watanabe was copied.

Majumdar filed a response and a signed declaration. In the declaration, she asserted that she had ended a dating relationship with Watanabe and had "never harassed or threatened or stalked [Watanabe] in any way."

A hearing was held on February 4, 2015, and the record reflects that Majumdar introduced into evidence two police reports. But the record is silent about whether other evidence or testimony was considered. No transcript of the hearing appears in the appellate record.

At the conclusion of the hearing, the trial court issued an order restraining Majumdar for a period of one year from harassing, intimidating, molesting, attacking, striking, assaulting, hitting, or abusing Watanabe, and from destroying his personal property or disturbing his peace. The order also prohibited Majumdar from directly or indirectly contacting Watanabe by a variety of written and electronic methods, "including Skype" (capitalization omitted), and it required Majumdar to stay at least ten yards away from Watanabe, his home, and his workplace. The court specifically found that the order was "based on unlawful violence, a credible threat of violence, or stalking."

## II.

### DISCUSSION

A. *We Must Presume that the Restraining Order Is Supported by Substantial Evidence Because the Appellate Record Does Not Include a Reporter's Transcript.*

Majumdar argues that the restraining order must be reversed because it was not supported by substantial evidence and she had legitimate reasons for her actions. The argument lacks merit.

Code of Civil Procedure section 527.6[2] provides a mechanism for victims of harassment to obtain an order enjoining further harassment. The statute was enacted to protect the " 'right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' " (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412.) Under section 527.6, harassment is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) A course of conduct is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or computer email." (§ 527.6, subd. (b)(1).) "The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) If the trial court "finds by clear and convincing evidence that unlawful harassment exists," a restraining order "shall issue." (§ 527.6, subd. (i).)

In reviewing a trial court's issuance of a civil harassment restraining order, we generally resolve all factual conflicts and questions of credibility in favor of the prevailing party, and indulge all reasonable inferences to uphold the judgment, so long as

---

[2] All subsequent statutory references are to the Code of Civil Procedure.

3

it is supported by substantial evidence—evidence that is reasonable, credible, and of solid value. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762; see also *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137.) The appellant has the burden " 'to demonstrate that there is *no* substantial evidence to support the challenged findings, ' " not merely that evidence exists supporting his or her case. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881, italics in original.) Thus, in " 'challeng[ing] the sufficiency of the evidence to support a particular finding,' " the appellant " 'must *summarize the evidence* on that point, *favorable and unfavorable,* and *show how and why it is insufficient.* [Citation.]' [Citation.] '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. [The appellant] cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his [or her] responsibility in this respect.' " (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409, italics in original.)

Majumdar cannot sustain her appellate burden because no transcript of the February 4 hearing appears in the record. "The California Rules of Court provide an appellant with a choice of several types of records upon which to take an appeal. The choices include a reporter's transcript, a clerk's transcript, an agreed statement and a settled statement. (Cal. Rules of Court, rules 8.831, 8.832, 8.834, 8.836, 8.837.)" (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) When an appellant elects to proceed on a clerk's transcript only, as Majumdar did here, "every presumption is in favor of the validity of the judgment and all facts consistent with its validity will be presumed to have existed. The sufficiency of the evidence is not open to review. The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924; see also Cal. Rules of Court, rule 8.163.) "To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's

4

transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) Consistent with these principles, we must presume that there is substantial evidence to support the restraining order here because we have no transcript of the relevant hearing.

   B.   *The Restraining Order Is Not Overbroad.*

   Majumdar also claims that the restraining order is overbroad because it "seems to restrain [her] from using Skype for any purpose." The argument is unpersuasive for several reasons.

   First, the restraining order is not nearly as expansive as Majumdar supposes. The order prohibits Majumdar "from doing the following things to [Watanabe]":

> "(1) . . . Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of any person.
> (2) . . . Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.
> (3) . . . Take any action to obtain the person's address or location. . . .
> (4) . . . Including SKYPE."

Although perhaps imprecise, the order clearly does not prohibit Majumdar from using Skype with everyone; it only prohibits her from using it to harass or contact Watanabe.

   Second, Majumdar's objection to the prohibition on using Skype is inconsistent with her failure to challenge the term restraining her from contacting Watanabe "in any way." Majumdar fails to explain how striking the prohibition on using Skype would afford any relief, given the presence of this other term.

   Finally, just as Majumdar's failure to designate a transcript of the February 4 hearing prevents us from evaluating her insufficient-evidence claim, it prevents us from determining whether the restraining order is overbroad. (See *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 179.) For all we know, evidence about Skype justifying the term prohibiting its use was introduced and considered at the hearing.

   We conclude that the restraining order is sufficiently narrow.

C.   *The Restraining Order Does Not Violate Majumdar's First Amendment Rights.*

Without citing any authority, Majumdar lastly argues that the restraining order violates her First Amendment rights because it prevents her "from going to any dance venues if [Watanabe] happens to be there" and requires her "to monitor all the locations [of Watanabe's] dance venues," so that she may "violate the restraining order without any intention of doing so." The argument is specious. Majumdar fails to explain why she cannot stay ten yards away from Watanabe and refrain from harassing him even if the two find themselves at the same event.

To the extent the order prohibits Majumdar's speech, it does not prohibit any constitutionally protected speech. "[S]peech that constitutes 'harassment' within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may obtain injunctive relief." (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1250.) The right to free speech "does not include the right to repeatedly invade another person's constitutional rights of privacy and the pursuit of happiness through the use of acts and threats that evidence a pattern of harassment designed to inflict substantial emotional distress." (*People v. Borrelli* (2000) 77 Cal.App.4th 703, 716.) The restraining order was entered only after the trial court determined that Majumdar harassed Watanabe. Its prohibition of continued harassment does not violate Majumdar's First Amendment rights.

III.
DISPOSITION

The judgment is affirmed. Watanabe is awarded costs, if any, on appeal.

6

_____

Humes, P.J.

We concur:


_____

Dondero, J.


_____

Banke, J.