Filed 1/27/26  Marriage of Ghazi and Richard CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of RENEE GHAZI and DAMIAN RICHARD. | |
| | D084722, D085340 |
| RENEE GHAZI, | |
| Respondent, | |
| v. | (Super. Ct. No. 22FL000811N) |
| DAMIAN RICHARD, | |
| Appellant. | |

CONSOLIDATED APPEALS from orders of the Superior Court of San Diego County, Renee Stackhouse, Judge.  Affirmed.

Damian Richard, in pro. per., for Appellant.

Mazur & Mazur and Janice R. Mazur for Respondent.

Damian Richard appeals the orders denying his motion to terminate temporary spousal support and his related motion for reconsideration issued during the pendency of the divorce proceeding between him and Renee Ghazi.

First, Richard argues the trial court erred by not properly considering evidence of domestic violence and not stopping temporary spousal support

payments on that basis. But the record shows the court considered the documented evidence of domestic violence presented as required under Family Code sections 3600 and 4320, subdivision (i). And given the lack of relevant hearing transcripts and many exhibits, the record is inadequate to meaningfully review the weight, if any, the court gave that evidence in denying Richard's motion. As for Richard's arguments that the court erred by both considering an earlier temporary restraining order (TRO) and not terminating temporary spousal support as a sanction for that TRO, they are forfeited or lack sufficient support.

Second, Richard contends the court abused its discretion by not terminating support payments under section 4323's rebuttal presumption of decreased need for support based on Ghazi's cohabitation with her boyfriend. Once again, however, the record is insufficient to meaningfully review this claim or disturb the court's finding that Ghazi rebutted that presumption. Richard falls short of his burden to prove the alleged inaccuracy of the court's statement, in its findings and order after hearing (FOAH) on his reconsideration motion, that Ghazi provided testimony at the original motion hearing. And the court's finding on conflicting evidence that Ghazi's need for temporary spousal support remained unchanged is one we defer to on appeal.

Third, Richard seeks a new trial judge to oversee further proceedings under Code of Civil Procedure section 170.1(c) based on the trial judge's alleged conflict of interest and bias. We conclude reassignment is not warranted here.

We therefore affirm.

## I.

The parties were married for 18 years, during which time they had two children.

2

Dissolution proceedings began in January 2022. At some point, the court ordered Richard to pay Ghazi monthly temporary spousal support of $851.

## A.

In late 2023, Richard moved to terminate temporary spousal support payments.[1] Among other things, Richard argued Ghazi (1) lived with her boyfriend, which created a rebuttable presumption of a decreased need for spousal support; and (2) committed domestic violence, specifically "violence and emotional abuse," against him and their children. Richard submitted a notice of intent to lodge 41 documents in support.

Ghazi opposed. She submitted a declaration attesting that her boyfriend sometimes stayed at the house to help her "feel safer" given her "fear" of Richard and her belief he was "still monitoring [her] movements without [her] knowledge." Ghazi denied receiving any financial help from her boyfriend and noted he did not stay with her fulltime and maintained his own home in another city.

Following an unreported hearing in February 2024, the trial court denied Richard's motion. In the corresponding minute order, the court found (1) Ghazi had "rebutted that presumption of cohabitation" and (2) no "change in circumstance" warranted granting Richard's request. It appears no FOAH was entered.

---

[1] Ghazi moves unopposed to augment the record with documents from the trial court, including Richard's request for order, supporting brief, and two lodgments he filed in support of ending temporary spousal support; the court's minute order and findings and order after hearing on Richard's related motion for reconsideration; and Richard's notices of appeal for this matter. We grant Ghazi's motion. (Cal. Rules of Court, rule 8.155.)

Richard moved for reconsideration of the court's denial based on "new facts establishing" Ghazi's boyfriend resided at the house and a missing page from Ghazi's income and expense declaration.

The "new facts" of cohabitation postdating the February hearing consisted of the children saying Ghazi's boyfriend still lived at the house and a photograph Richard took purportedly showing the boyfriend's car parked outside the house.

According to Ghazi's opposing declaration, the court's copy of her income and expense declaration included the page missing from Richard's copy. Richard was served with that document almost two weeks before the February hearing, yet he failed to bring the missing page to Ghazi's or the court's attention until after the court denied his request to terminate temporary spousal support.

Richard waited until his reply brief to identify Ghazi's alleged domestic violence as a ground for reconsideration. In addition to the alleged violence and emotional abuse previously identified, for the first time in these spousal support papers Richard raised claims of domestic abuse by Ghazi "in the form of intentionally sabotaging [his] custody and parenting time, constant parent alienation and disparagement, and includes financial control or isolation, including actions such as controlling access to money, withholding financial resources needed for basic necessities, preventing a spouse from career pursuits, and sabotaging financial independence."

Following an unreported hearing in June 2024, the trial court denied Richard's motion for reconsideration. In its FOAH, the court found Richard's new evidence related to Ghazi's boyfriend was either impermissible hearsay or insufficient to prove cohabitation. As for the missing page from Ghazi's

income and expense declaration, the court faulted Richard for making "no mention" of it at the February hearing and noted Ghazi "provided testimony under oath as to those factors." As for Richard's domestic violence argument, the court found "that may be true as to both parties and is one factor to consider."

## II.

### A.

Richard moves for judicial notice of five categories of documents. Ghazi opposes. We deny in part and grant in part the motion.

Exhibit A purports to be a copy of the Navy-Marine Corps Trial Judiciary weekly docket from April 28 through May 2, 2025. Richard asserts a set of three letters followed by "#" indicates the trial judge's spouse, apparently an attorney practicing military law, visited his place of employment to "advocat[e] interests directly opposite of [Richard]'s employer." "Although the *existence* of a document may be judicially noticeable, the truth of statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113.) Because this document's relevance depends on a reasonably disputable interpretation of it, we decline to judicially notice it.

Exhibit B is a file-stamped copy of the court's denial of Ghazi's ex parte application about the proposed FOAH for the June hearing. This document was filed in the trial court, so we construe Richard's request as to Exhibit B as a motion to augment and grant it. (Cal. Rules of Court, rule 8.155(a)(1).)

Exhibit C contains excerpts from Ghazi's opposition to Richard's earlier motion to augment in this matter. But as Richard notes, this document is

5

"already in this appellate court's record." Accordingly, we deny as moot the request as to this exhibit.

Richard also seeks judicial notice of parts of the docket from two petitions for writ of mandate he filed to try to disqualify the trial judge. (D084750 & D085166.) We take judicial notice of the existence of these petitions for writ of mandate but not "the truth of any of the allegations contained in" them. (*Wolf v. CDS Devco* (2010) 185 Cal.App.4th 903, 915.) On our own motion, we take judicial notice of the orders summarily denying those petitions. We deny Richard's motion as to the remaining portions of those dockets.

## B.

Richard challenges the court's orders denying his motion to terminate temporary spousal support and his subsequent motion for reconsideration. The denial of a motion to terminate temporary spousal support is appealable under the collateral order doctrine. (*In re Marriage of Campbell* (2006) 136 Cal.App.4th 502, 505-506.) The denial of Richard's related motion for reconsideration "is reviewable as part of an appeal from that [underlying] order." (Code Civ. Proc., § 1008, subd. (g).)

We review an order regarding modifying spousal support for abuse of discretion. (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29.)

We also review rulings on motions for reconsideration for abuse of discretion. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) A party may seek reconsideration of an order "based upon new or different facts, circumstances, or law." (Code Civ. Proc., § 1008(a).) "A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time." (*New York Times Co.*, at p. 212.)

6

As a "fundamental principle of appellate procedure," we presume the trial court's order is correct, so the appellant bears the burden to prove reversible error "on the basis of the record presented to the appellate court." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  Consequently, "if the record is inadequate for meaningful review," we should affirm.  (*Id.* at p. 609 [cleaned up].)  Likewise, the appellant "must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  "[C]onclusory claims of error will fail."  (*Ibid.*)

We address Richard's arguments with these principles in mind. Richard, a licensed attorney, represents himself in this appeal.  A self-represented party "is to be treated like any other party and is entitled to the same, but no greater, consideration than" a party represented by counsel. (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.)  Thus, while we have considered all adequately developed arguments needed to resolve this appeal that Richard separately identified under an appropriate heading in his opening brief, to the extent he has asserted additional arguments that we have not addressed, they are forfeited.  (See *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25; Cal. Rules of Court, rule 8.204(a)(1)(B).)

1.

Richard argues the court committed reversible error by signing Ghazi's proposed FOAH for his motion for reconsideration because the FOAH was "knowingly forged," the court received it through an "impermissible ex parte communication," and the court lacked jurisdiction to sign it.  He also accuses the trial court of "committing fraud" by stating, in the minute order and FOAH for the reconsideration hearing, that Ghazi testified at the February hearing.  We are not persuaded.

7

First, Richard asserts the FOAH contains a "knowingly false statement" "suggesting" he approved it. Under "[a]pproved as conforming to court order," Ghazi's proposed FOAH checked boxes for both "Respondent/Defendant"—Richard's position in the trial court—and "Other Party," with "Minor's Counsel" handwritten underneath. But Ghazi's accompanying letter to the court expressly stated the parties disagreed about the FOAH and attached Ghazi's and Richard's competing proposed FOAHs, thus dispelling any confusion that might have arisen from the box by "Respondent/Defendant" being checked. Notably, Richard does not argue (1) the court signed Ghazi's FOAH because it believed Richard approved it or (2) any resulting prejudice.

Second, Richard claims Ghazi's trial counsel communicated ex parte with the trial court about this FOAH in violation of Rules of Professional Conduct Rule 3.5 (Ghazi's counsel) and Canons of Judicial Ethics Canon 3B(7) (the trial court). He relies on Ghazi's trial counsel's declaration about submitting a letter "containing both parties' drafts of the [FOAH] and an explanation as to how the two drafts differed"—the same letter attached to Ghazi's ex parte application that Richard received and submitted a response to—in the court's "drop box for processing." Richard fails to explain how the submission of a document already filed with the court and to which he had already responded constituted an impermissible ex parte communication.

Third, Richard's jurisdictional argument is forfeited for lack of supporting legal authority. (*In re Champion* (2014) 58 Cal.4th 965, 986.) For the first time in reply, Richard argues the court's "own order precluded" it from signing the FOAH Ghazi proposed. This argument is forfeited as untimely. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.) Even if

8

it had been timely raised, it is unpersuasive. Richard is referring to when the trial court denied Ghazi's earlier ex parte application to accept her FOAH because it was "[n]ot an emergency." Richard fails to explain how the court's ruling, which addressed the procedural mechanism by which Ghazi presented the proposed FOAH and not its substance, tied the judge's hands with respect to Ghazi's later submission.

Fourth, Richard insists Ghazi did not testify at the February hearing and claims the trial court stated otherwise to defraud this court and to "garner undue special deference on appeal." First, it is possible that, by "testimony under oath," the court was referring to Ghazi's declaration. (See Code Civ. Proc., §§ 2002 ["The testimony of witnesses is taken in three modes," including "[b]y affidavit."], 2003 ["An affidavit is a written declaration under oath."].) Second, the February hearing was unreported, and Richard did not submit an agreed or settled statement summarizing the hearing. (See Cal. Rules of Court, rules 8.134 & 8.137.) The "lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have [the] claims of trial court error resolved on the merits by an appellate court." (*Jameson*, 5 Cal.5th at p. 608.) We presume the court's order is correct unless the appellant proves otherwise. (*Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1229.) Richard points to the minute order on the February hearing, which leaves unchecked the box available to indicate Ghazi was sworn and examined. Even so, without a reporter's transcript or settled statement, we cannot determine if the unchecked box in the minute order in fact means Ghazi did not provide oral testimony or is a mere clerical error. (See *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1002-1003 [record inadequate to determine if court

9

made clerical error].)  As a result, Richard has not satisfied his burden to overcome the presumption of correctness.

2.

Richard contends the trial court abused its discretion by (1) "fail[ing] to properly consider the evidence of Ghazi's domestic violence" under Family Code section 4320(i) and (2) purportedly considering what he deems a "sham" TRO Ghazi had protecting her from Richard in violation of section 4320(i)(4). We disagree.

When evaluating a temporary spousal support request, the trial court must consider "[a]ll documented evidence of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child."  (§§ 3600, 4320(i).)  "[D]omestic violence is the *only* issue that the Legislature has expressly mandated that a trial court consider in determining whether to award temporary spousal support."  (*In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1071.)

a.

Richard claims the court "ignore[d]" the domestic violence evidence presented.  "Absent an indication to the contrary, we are required to presume a court was aware of, and followed, the applicable law and considered all the relevant facts and arguments."  (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447.)  Richard has not rebutted that presumption.  He labels the court's statement in the February minute order that it was "not required to do a [Family Code section] 4320 analysis at this point" as a misstatement of law warranting reversal.  But the statement is accurate as far as it goes.  At the temporary spousal support stage, the court need not consider all fourteen section 4320 factors, which are relevant to permanent rather than temporary spousal support.  (*Freitas*, 209 Cal.App.4th at p. 1071.)  It must consider only

10

documented evidence of domestic violence. (*Ibid.*) And unlike in *In re Marriage of Gilbert-Valencia & McEachen* (2023) 98 Cal.App.5th 520, 528, nothing in the record here indicates the court excluded such evidence. To the contrary, in its minute order for the February hearing, the court stated it "reviewed the documents filed" and expressed "great concern[] for what is happening in the home" based in part on the allegations raised in the pleadings. And the FOAH on the motion for reconsideration acknowledged Richard's "argument that [Ghazi] is a perpetrator of domestic violence . . . is one factor to consider." Thus, although we lack a transcript of these hearings, the record shows the court considered the domestic violence evidence Richard presented as required by sections 3600 and 4320(i).

To the extent Richard disputes the weight the court gave his domestic violence evidence, the record is inadequate to meaningfully review this point. To evaluate this claim, we would need to know "the basis of the trial court's reasoning." (*Rhule*, 8 Cal.App.5th at p. 1229.) Neither the minute orders nor the FOAH "sufficiently illuminate the factual and legal predicate for the trial court's orders" on this point, so "a reliable record of what transpired at the hearing[ ] is indispensable for our review." (*Id.* at p. 1229, fn. 5.) But as already noted, such record is lacking here. Worse still, we do not have a full picture of the evidence presented on the domestic violence allegations. Although the appellate record contains a confidential declaration with some screenshots and excerpts from the more than 40 documents Richard lodged in

11

support of his motion, most of the underlying exhibits are absent.[2] And without a record of the February hearing, we cannot evaluate the full scope of Ghazi's oral testimony, to the extent she provided any, and whether it contradicted or undermined Richard's evidence. Without a record of the relevant hearing, "[t]he trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.) Given the critical holes in the appellate record, we are not convinced reversible error appears on this basis.

b.

Concerning a TRO Ghazi obtained against Richard but later withdrew, Richard argues the court (1) violated a "mandatory exclusion" in section 4320(i)(4) by considering it and (2) abused its discretion by not terminating temporary spousal support because Ghazi tried to frustrate Richard's parent rights through this "sham TRO." Again, Richard falls short of establishing error on these grounds.

Section 4320(i)(4) identifies the "[i]ssuance of a protective order after a hearing pursuant to Section 6340" as an example of documented evidence of domestic violence that the court must consider when assessing spousal support. Though Richard references a "mandatory exclusion," we see no exclusionary language in this provision. To the contrary, the statute

---

[2] Richard accuses the trial court of "destroy[ing] the physical exhibits" he lodged. Yet the minute order from the February hearing notes lodgments were "returned" to the parties. Richard disputes the accuracy of the minute order on this point. Regardless, in addition to being underdeveloped and without record support, this issue about the court allegedly mishandling exhibits is outside the scope of this appeal. (See Code Civ. Proc., § 904.1 [appeals may be taken only from enumerated orders and judgments].)

identifies examples of documented evidence of domestic violence "including, but not limited to," items such as a protective order issued after a hearing. (§ 4320(i).) The term "including" "is ordinarily a word of enlargement and not of limitation" (*Craig v. City of Poway* (1994) 28 Cal.App.4th 319, 339), and here the statute explicitly states courts are "not limited" to the list of examples (§ 4320(i)). Richard thus has not convinced us section 4320(i)(4) precluded the court from considering Ghazi's earlier TRO against Richard, to the extent it even did so. And because he provides neither explanation nor legal authority to support the point, the argument is also arguably forfeited as underdeveloped. (*Champion*, 58 Cal.4th at p. 986.)

Next, Richard contends the court erred by not terminating temporary spousal support as a "sanction" because he believes Ghazi's TRO was a "sham" based on a "knowingly false" declaration and obtained for the "'sole purpose'" of alienating him from their children. The only support Richard provides for the alleged falsity of the TRO and Ghazi's purported nefarious intent, however, is his say-so in his appellate briefing and in a letter to the trial court. But a party's representation is not evidence. (See *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.) As a result, Richard has not met his burden to prove error on this basis.

3.

Richard argues the court abused its discretion by not stopping support payments under section 4323 based on Ghazi's alleged cohabitation with her boyfriend. We discern no abuse of discretion.

Section 4323 creates a "rebuttable presumption, affecting the burden of proof, of decreased need for spousal support if the supported party is cohabiting with a nonmarital partner" given economies of scale and the potential availability of the cohabitant's income. (*In re Marriage of*

*Geraci* (2006) 144 Cal.App.4th 1278, 1298-1299.)  Thus, "[u]pon a determination that circumstances have changed, the court may modify or terminate the spousal support."  (§ 4323(a)(1).)

In support of his motion to terminate temporary spousal support, Richard attested that Ghazi's boyfriend "resides rent-free" with her.  He supplied a copy of Ghazi's request to terminate the TRO, signed in late November 2023, in which she stated she "currently ha[s] a significant other residing with" her.

In response, Ghazi attested that, in November 2023, her boyfriend started staying overnight in her guest bedroom "intermittently," but he did not live there fulltime.  According to Ghazi, her boyfriend did not help with any living expenses aside from occasionally buying his own groceries.  The record indicates Ghazi filed an income and expense declaration and bank and credit card statements showing her payments for household and living expenses.  Richard did not, however, include those documents in the appellate record.

The court found Ghazi had rebutted section 4323's presumption and no change in circumstance warranted terminating temporary spousal support.

The absence of (1) Ghazi's exhibits and income and expense declaration and (2) a record of the February hearing leave us unable to meaningfully review the court's findings, which is ground for affirming.  (*Jameson*, 5 Cal.5th at p. 609.)

We perceive no error on the face of the limited record before us. Richard focuses on Ghazi's November 2023 statement about her boyfriend residing with her, seemingly to suggest he lives there fulltime.  Yet after receiving the parties' conflicting evidence, including declarations and Ghazi's testimony, if any, the court found the boyfriend does not.  We "defer to the

14

factual determinations made by the trial court when the evidence is in conflict," no matter "whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.) Here, even the incomplete record contains substantial evidence to support the court's factual finding, and we will not disturb it on appeal.

The court also found the boyfriend "d[id] not contribute to [Ghazi's] residence such as maintenance or food," which supports its conclusion that Ghazi rebutted section 4323's presumption of decreased need for support. Yet Richard, without explanation or legal authority, cites that same lack of contribution as a reason the court should have terminated spousal support. This underdeveloped point is forfeited. (*Champion*, 58 Cal.4th at p. 986.)

Finally, Richard contends the court's refusal to end temporary spousal support under section 4323 "operates as a subsidy for Ghazi to care for [her boyfriend] as an adult child." The cases he relies on, however, are distinguishable because they involved indirect child support to the parties' adult *children*. (*In re Marriage of Serna* (2000) 85 Cal.App.4th 482, 487; *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 910-911.) Richard provides no authority or justification for expanding the concept of indirect adult *child* support to a spouse's *significant other*. As a result, we are not persuaded by this novel argument.

4.

Richard seeks reversal because the denial orders were "procured from, and based upon," a chart of five allegedly "willful acts of fraud and deceit" by Ghazi and her counsel. This argument section is devoid of supporting legal authority and thus the claim is forfeited. (*Champion*, 58 Cal.4th at p. 986.) Besides, we have already addressed Richard's claim the reconsideration FOAH was "forged." And Richard fails to explain how purported lies about

15

various pre- and post-petition payments relate to his arguments the court erred under sections 4320(i) or 4323. Finally, Richard's belief Ghazi "lie[d]" about her cohabitation with her boyfriend boils down to a disagreement with how the court dealt with the conflicting evidence before it, which we defer to on appeal. (*Shamblin*, 44 Cal.3d at p. 479.)

5.

Richard provides a similar chart identifying acts by the trial court he contends "constitute reversible error." Most have been addressed elsewhere in this opinion. To the extent we have not addressed any others, they are forfeited as underdeveloped or lacking legal support. (*Champion*, 58 Cal.4th at p. 986.)

C.

Lastly, Richard accuses the trial judge of being "currently conflicted" and of showing "extreme animus and bias" against him, so he asks us to reassign further proceedings to be held before a different trial judge under Code of Civil Procedure section 170.1(c). We decline to do so.

At a party's request, we must consider if the interests of justice favor directing further proceedings to be heard before a different trial judge. (Code Civ. Proc., § 170.1(c).) Such power is to be used sparingly, such as where a judge acts in a manner indicating "an animus inconsistent with judicial objectivity" or a "whimsical disregard" of the law. (*People v. Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1562.)

Richard has twice tried—without success—to disqualify the trial judge by petition for writ of mandate, largely for the same reasons advanced here. (See D084750 & D085166.)

Richard seeks reassignment based on a slew of claims of "actual conflict of interest" and bias. These claims of conflict of interest include the fact that

16

the trial judge used to practice, and her spouse currently practices, military law like Richard does. Richard neither provides any record support for his assertion that the trial judge "advocat[ed] directly against" his interests before she became a judicial officer, nor establishes the judge's spouse's current practice has pitted him directly against Richard. Richard also faults the trial judge for "allowing" Ghazi and her counsel to "commit perjury." Even if we were to set aside the fact that we have no conclusive evidence or finding of perjury in the record, Richard neither explains nor cites legal authority for why such alleged perjury by other parties reflects bias on the trial judge's part.

We have considered all claims of conflict of interest or bias Richard raises in the appellate briefing, and we conclude reassignment is not warranted.

### III.

We affirm the orders. Ghazi is entitled to recover appellate costs. (Cal. Rules of Court, rule 8.278(a)(1).)


CASTILLO, J.

WE CONCUR:


DO, Acting P. J.


RUBIN, J.


17